UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSEPH STANISLOV KALUZA,
  A# 96-431-565,

                              Petitioner,

                                                   **DECISION AND ORDER**
                                                          10-CV-403A

      v.

MARTIN D. HERRON et al.,

                              Respondents.
_____

I.      **INTRODUCTION**

On May 13, 2010, petitioner Joseph Kaluza filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3). At the time of filing, petitioner had been in continuous immigration custody since November 2005 and sought to challenge the legality of his continued detention. On December 22, 2010, however, petitioner was indicted and charged with one count of willfully failing and refusing to make a timely application in good faith for a travel document necessary for his removal, in violation of 8 U.S.C. § 1253(a)(1)(B). (*See generally* Case No. 10-CR-396A.) On December 30, 2010, petitioner was transferred from immigration custody to the custody of the United States Marshals for the pendency of his criminal case. On February 9, 2011, a jury

found petitioner guilty of the count in the indictment; he is currently scheduled to be sentenced on May 25, 2011.

In response to petitioner's conviction, respondents filed a motion to dismiss on mootness grounds on April 21, 2011. The Court has conducted its own examination of jurisdiction in response to respondents' motion. Given the briefing that the parties submitted previously regarding the underlying petition, the Court deems both the motion and the main petition submitted on papers pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons below, the Court grants respondents' motion and dismisses the petition on the basis of prudential ripeness.

## II. BACKGROUND

This case concerns whether petitioner should be released from immigration custody for as long as he refuses to apply for a travel document to complete his removal to Poland. Petitioner was born in Poland in 1956. Petitioner has been a citizen of Poland with no lawful immigration status in the United States. Assuming without deciding the accuracy of his background narrative, petitioner was an activist in the anti-Communist Solidarity movement in the early to mid-1980s. After several run-ins with Communist officials that occurred in retaliation for his political actions, petitioner left Poland in 1986 and entered the United States as a visitor on July 13, 1986. The visitor visa lasted six months. Even though his visitor visa has long since expired, petitioner has remained in the

United States. The docket and petitioner's immigration file contain some information suggesting that petitioner did not draw the attention of immigration officials until a series of drunk-driving convictions early last decade caused him to serve several years of imprisonment in the New York state prison system.

Petitioner's efforts to remain in the United States after immigration officials noticed his visa violation laid the foundation for his criminal prosecution and pending habeas petition. On October 8, 2004, while petitioner was in state prison, immigration officials served him with a Notice to Appear, charging him with overstaying his visitor visa without authorization and thus being subject to removal. An immigration judge first ordered petitioner removed on January 13, 2005. That order of removal was upheld by the Board of Immigration Appeals ("BIA") on May 10, 2005; petitioner made but then withdrew an appeal to the United States Court of Appeals for the Second Circuit. Meanwhile, petitioner had applied for asylum on the grounds of fear of political persecution. On June 9, 2008, an immigration judge denied petitioner's request for asylum and again ordered him removed. The BIA affirmed the denial of asylum on August 29, 2008. Petitioner appealed the denial of asylum to the Second Circuit, which dismissed the appeal as frivolous on March 17, 2009. On March 27, 2009, petitioner filed a motion with the BIA to reopen his case, which the BIA denied on April 24, 2009. Petitioner appealed the refusal to reopen to the Second Circuit on June 26, 2009. The Second Circuit dismissed this appeal on January 12, 2010

and issued the corresponding mandate on February 2, 2010. Petitioner's removability became final as of this date.

Even after petitioner's removability was definitively resolved, however, the last logistical step in completing his removal was that he had to apply to the Polish Consulate for a travel document that would allow him to re-enter Poland. Four times—on February 4, March 3, April 30, and June 10, 2010—the Government gave petitioner 30 days to apply for the travel document. Four times, petitioner refused and let the deadlines pass, citing fear of political retribution if he ever returned to Poland. To date, petitioner has yet to apply for a travel document, knowing that he cannot be removed to Poland if he never makes that application. From November 10, 2005, when he was released from state custody, to December 30, 2010, petitioner was in continuous immigration custody. Since December 30, 2010, petitioner has been in the custody of the United States Marshals because of his criminal case.

The Government criminally prosecuted petitioner in response to his refusal to apply for a travel document. On December 22, 2010, the Government filed a one-count indictment charging petitioner with willful refusal to make a timely application in good faith for a travel document, in violation of 8 U.S.C. § 1253(a)(1)(B). On February 8, 2011, the Court granted the Government's motion *in limine* to preclude petitioner from re-litigating his immigration case by

4

telling the jury what he feared might happen to him if he returned to Poland.[1] On February 9, 2011, the Court held a one-day trial after which the jury found petitioner guilty of the count in the indictment. As mentioned above, petitioner will be sentenced on May 25, 2011. Petitioner will face a maximum term of imprisonment of four years.[2]

Through their motion to dismiss, respondents contend that petitioner's conviction changes the complexion of his underlying petition. Petitioner originally sought habeas relief on the grounds that *Zadvydas v. Davis*, 533 U.S. 678 (2001), *Demore v. Kim*, 538 U.S. 510 (2003), and related cases forbid the "languish[ing] in detention forever" that he claimed to be experiencing. In response to respondents' argument that he was prolonging his own removal by refusing to apply for travel document, petitioner claimed that he fears for his life upon return to Poland and that his fear cannot serve as the basis for a potentially

---

[1] Apart from the issue of re-litigation, petitioner never offered any specific information to support his speculation that Communists or ex-Communists would look for him 25 years after he left Poland. *Compare Leiva-Perez v. Holder*, ___ F.3d ___, 2011 WL 1204334, at *8 (9th Cir. Apr. 1, 2011) ("Leiva–Perez testified before the IJ, who found Leiva–Perez credible, that he was personally targeted for extortion and savage beatings by a particular group of individuals affiliated with the Farabundo Martí National Liberation Front ('FMLN'), a political party.") *with U.S. v. Flores-Santos*, 269 Fed. App'x 196, 2008 WL 683937, at *2 (3d Cir. Mar. 14, 2008) (unpublished) ("Flores-Santos did not present any evidence in support of his subjective fear of returning to El Salvador, either pretrial or on appeal. Thus, the District Court did not err in barring the justification defense.").

[2] Petitioner's immigration file indicates that he was ordered removed under 8 U.S.C. § 1227(a)(1)(B), which makes the statutory maximum four years under 8 U.S.C. § 1253(a)(1).

infinite detention. After his criminal conviction, however, respondents argue that this Court cannot grant petitioner the relief requested because habeas relief is directed to a petitioner's immediate physical custodian, and immigration agents have not had custody of petitioner since December 2010. Respondents add that any argument that petitioner might have under *Zadvydas* would not be ripe until he returns to immigration custody after serving any criminal sentence, and after his removal period expires.

## III. DISCUSSION

### A. *Custody and Constitutional Ripeness*

Because respondents challenge this Court's jurisdiction to consider the petition, the Court will review what authority it has to grant the relief requested. Generally, this Court may issue a writ of habeas corpus releasing an alien from immigration custody if "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The plain language of Section 2241(c)(3) contains two jurisdictional requirements: the alien must be "in custody," and he must be experiencing a concrete injury of constitutional or federal statutory magnitude. Here, petitioner has not been in literal immigration custody since December 2010, when his custody transferred to the United States Marshals pending resolution of his criminal case. Nonetheless, immigration officials are required by statute to take him back into immigration custody upon completion of any term of imprisonment that this Court imposes in his criminal

case. *See* 8 U.S.C. §§ 1231(a)(1)(B)(iii), 1231(a)(2) (stating that "the Attorney General shall detain the alien" upon release from criminal detention). Additionally, any future immigration custody that petitioner faces would occur pursuant to a final order of removal that this Court lacks jurisdiction to disturb. The final order of removal constitutes enough of a legal injury to petitioner to create a live controversy in this case for Article III purposes. *See Simmonds v. I.N.S.*, 326 F.3d 351, 356 (2d Cir. 2003) ("There is nothing in the nature of the liberty deprivation that Simmonds' future custody will bring about that distinguishes it, in a way relevant to the holding in [*Frazier v. Wilkinson*, 842 F.2d 42 (2d Cir.1988)], from that of a prisoner challenging a consecutive criminal sentence. We therefore hold that *Frazier* applies to alien prisoners challenging final removal orders and that, under *Frazier*, Simmonds is in INS custody for purposes of § 2241."). Consequently, petitioner remains in constructive immigration custody and satisfies the basic requirement of constitutional ripeness. The Court denies respondents' motion to the extent that it asserts otherwise.

    B.    ***Prudential Ripeness***

Although petitioner has met the basic requirements of custody and constitutional ripeness, his petition presents an unusual question of prudential ripeness: Is a habeas corpus petition under 28 U.S.C. § 2241 ripe for review in the present time if the occurrence and duration of any future custody lies entirely

within the petitioner's control? "In this determination, we are guided by the Supreme Court's general framework for analyzing the prudence of hearing a claim of future injury. And so we ask: (1) whether an issue is fit for judicial decision and (2) whether and to what extent the parties will endure hardship if decision is withheld. While these questions are also relevant to the constitutional ripeness determination, we confront them here to decide only whether Simmonds' claims would *better* be heard now or at some point in the future." *Simmonds*, 326 F.3d at 359 (citation omitted). So far, existing case law has established that a habeas petition is fit for present review where immigration custody is guaranteed to happen and will occur in the near future. *Compare Simmonds*, 326 F.3d at 360 (finding a lack of prudential ripeness where the petitioner was serving a state sentence of 23 years to life with no certainty as whether or when parole might be granted) *with Edwards v. I.N.S.*, 393 F.3d 299, 306 (2d Cir. 2004) (finding prudential ripeness where the petitioner "may be released and deported within the next two years") *and Castillo Acevedo v. I.N.S.*, No. 02 Civ. 9623, 2003 WL 22416122, at *4 (S.D.N.Y. Oct. 22, 2003) ("[S]uch hardship [in *Simmonds*] was only potentially potential because it was possible that Simmonds might *never* be released. Acevedo's assertion of hardship is less distant, with just six years left to serve, it is possible that he would not have another opportunity to file his petition, and therefore could be detained or even deported.") *and Osses v. McElroy*, 287 F. Supp. 2d 199, 203 (W.D.N.Y. 2003) (Larimer, *J.*) ("Unlike the

petitioner in *Simmonds*, Osses does not face an extraordinarily long state sentence [1–3 years]. The matter of ripeness or judicial prudence which dictated delay in the *Simmonds* case does not apply here.").

The above cases, however, have not addressed the factual twist that petitioner presents here, namely that his final order of removal has been definitively settled after administrative and judicial review, and that his refusal to apply for a Polish travel document is the only barrier to his removal and the only reason why any future immigration custody would occur. So far, petitioner appears to have been sufficiently determined to remain in the United States under any circumstances that he refused repeatedly to take the last step in completing his removal. To the extent that petitioner was in immigration custody in the past, that custody was proper given petitioner's efforts to frustrate his removal. *See* 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."). Petitioner may well choose to continue refusing to apply for a travel document when his criminal custody ends, but perhaps not. The Court cannot know petitioner's future choices in advance. In the event that petitioner changes his mind in the coming months or years and decides to apply for a travel document after all, any

immigration custody that occurs will be brief. Weighing in now on a hypothetical prolonged immigration detention would require needless speculation. The more prudent course is to wait and see what course of conduct petitioner takes while he serves any criminal sentence imposed. The Court thus finds that the petition is not fit for review at this time and grants respondents' motion on this basis.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court grants respondents' motion to dismiss (Dkt. No. 11). Petitioner's petition for habeas corpus relief is dismissed on the grounds of prudential ripeness.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. U.S.*, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

The Clerk of the Court shall close this case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: April 25, 2011